## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF TEXAS

_____

DEWEY BETHEL,

       Plaintiff,

v.                                                       Civil Action: 3:24-cv-2003

                                              With Jury Demand Endorsed

EQUIFAX INFORMATION SERVICES LLC,
EXPERIAN INFORMATION SOLUTIONS,
INC., AND WELLS FARGO HOME
MORTGAGE, INC.,

       Defendants.

---

## <u>COMPLAINT</u>

TO THE HONORABLE UNITED STATES DISTRICT COURT JUDGE:

Plaintiff, Annie Hobbs ("Plaintiff"), by and through counsel, for his Complaint against Defendants, Equifax Information Services LLC, Experian Information Solutions, Inc., and Wells Fargo Home Mortgage, Inc., jointly, severally, and in solido, states as follows:

### I.  INTRODUCTION

1.      Three of the Defendants are consumer reporting agencies ("CRAs") as defined by 15 U.S.C. § 1681a(f), and Defendant, Wells Fargo N.A. is a furnisher of consumer information. All

Defendants have violated 15 U.S.C. § 1681 *et seq.*, known as the Fair Credit Reporting Act (the "FCRA"). Plaintiff seeks to recover from Defendants actual, statutory, and punitive damages, injunctive relief, legal fees, and expenses.

## II. PARTIES

2.      Plaintiff, Dewey Bethel, is a natural person residing in Tarrant County, Texas, and is a "consumer," as defined by the FCRA, 15 U.S.C. § 1681a(c), and is a victim of repeated false credit reporting.

**Made Defendants herein are**:

3.      Upon information and belief, Defendant Equifax Information Services LLC, which may also hereinafter be referred to as "Equifax," "Defendant," "Defendants," "CRA," "CRA Defendant," or "CRA Defendants" is a Georgia limited liability company that does substantial business in this judicial district and may be served by delivering a summons to its headquarters, 1550 Peachtree Street, Northwest, Atlanta, Georgia 30309.  Equifax is a nationwide consumer reporting agency ("CRA") as defined by 15 U.S.C. § 1681a(f). Equifax regularly engages in the business of assembling, evaluating, and disbursing information concerning consumers for the purposes of furnishing "consumer reports" as defined by 15 U.S.C. § 1681a(f) to third parties. Equifax disburses such consumer reports to third parties of contract for monetary compensation.

4.      Upon information and belief, Defendant Experian Information Solutions, Inc., which may also hereinafter be referred to as "Experian", "Defendant," "Defendants," "CRA," or "CRA Defendant," or "CRA Defendants," is an Ohio corporation that does business in this judicial district and may be served by delivering a summons to its headquarters, 475 Anton Blvd., Costa Mesa,

California 92626. Experian is a nationwide CRA as defined by 15 U.S.C. § 1681a(f). Experian regularly engages in the business of assembling, evaluating, and disbursing information concerning consumers for the purposes of furnishing "consumer reports" as defined by 15 U.S.C. § 1681a(f) to third parties. Experian disburses such consumer reports to third parties of contract for monetary compensation.

5.      Upon information and belief, Defendant Wells Fargo Home Mortgage, Inc., which may also hereinafter be referred to as "Wells Fargo," "Defendant," "Defendants," "Furnisher Defendant," or "Furnisher Defendants," is a Iowa corporation that does substantial business in this judicial district and may be served by delivering a summons to its Legal Department at its headquarters in 1 Home Campus Des Moines, IA, 50328-0001. Wells Fargo is a "person," as defined by the FCRA, 15 U.S.C. § 1681a(b), and a furnisher of consumer credit information to consumer reporting agencies.

6.      As used herein, "consumer reporting agency," or "CRA," means any person which, for monetary fees, dues, or on a cooperative nonprofit basis, regularly engages in whole or in part in the practice of assembling or evaluating consumer credit information or other information on consumers for the purpose of furnishing consumer reports (commonly referred to as "credit reports") to third parties, and which uses any means or facility of interstate commerce for the purpose of preparing or furnishing consumer reports and is an entity in the business of collecting, maintaining and disseminating information regarding the credit-worthiness of individuals. CRAs specifically include, but are not limited to, Equifax, and Experian.

### III.  JURISDICTION AND VENUE

7.      Plaintiff respectfully asserts that this Honorable Court has jurisdiction in this case arises under federal law. 28 U.S.C. § 1331, 1334, and 1367 and 15 U.S.C. § 1681(p). Plaintiff also asserts actions under states' laws which may be brought within the supplemental jurisdiction of this Court and Plaintiff respectfully requests that this Honorable Court exercise supplemental jurisdiction over said claims. 28 U.S.C. § 1367.

8.      Venue is further proper in this District because Plaintiff resides in this judicial district. CRA Defendants and Furnisher Defenants transact business in this District and a substantial part of the conduct complained of occurred in this district, and various actions made basis of Plaintiff's claims against Defendants occurred in the Northern District of Texas as further described. 28 U.S.C. § 1391.

### IV.  FACTUAL ALLEGATIONS

9.      Upon information and belief, in or around September 2010 Plaintiff secured a mortgage for his property located at 1610 Edinborough Ct, Euless, TX 76039 with Wells Fargo Home Mortgage, Inc. who assigned loan number 708037*******, hereinafter ("Wells Fargo mortgage account").

10.      On July 11, 2018, Plaintiff filed for a Chapter 13 bankruptcy. A redacted copy of Plaintiff's chapter 13 bankruptcy docket report is attached hereto as Exhibit A.

11.      On September 17, 2018, Plaintiff Chapter 13 payment plan was confirmed.

12.      On June 16, 2023, Plaintiff was discharged from his chapter 13 bankruptcy and, excepted from discharge, was Plaintiff's Wells Fargo Mortgage account. A redacted copy of

Plaintiff's Chapter 13 Bankruptcy Discharge Order is attached hereto as Exhibit B.

13.     Read in concert, Sections 1322(a)(2), 1322(b)(5), and 1328(a)(1) of the Bankruptcy Code, bar discharging home mortgage debts in a Chapter 13 Bankruptcy.

14.     On July 13, 2023, The Trustee for Plaintiff's Chapter 13 Bankruptcy filed a Chapter 13 Standing Trustee's Final Report and Account. A redacted copy of Plaintiff's Chapter 13 Bankruptcy Trustee's Final Report and Account is attached hereto as Exhibit C.

15.     On or around August 18, 2023, Plaintiff's Chapter 13 Bankruptcy was terminated. *See* Exhibit A.

16.     Throughout Plaintiff's Chapter 13 Bankruptcy, under direct or indirect order from the bankruptcy Trustee, timely monthly mortgage payments were made to the Wells Fargo mortgage account.

17.     After discharge, Plaintiff continued to make timely mortgage payments to her Wells Fargo mortgage account.

18.     Sometime in January 2024, Plaintiff obtained his three-bureau credit report and noticed that the Equifax, and Experian, credit report(s) were not accurate. A redacted copy of Plaintiff's three-bureau credit report is attached hereto as Exhibit D.

19.     Within the Equifax credit report Plaintiff noticed that it reported the Wells Fargo mortgage account without the correct update that indicated that this secured debt was initially filed. This led to reporting this open account with a $0 balance, and a $0 payment amount and a late payment of July 1, 2018.  Further, it neglected to provide the update that the tradeline was later discharged and failed to update the recent activity following the bankruptcy The reporting is incorrect because Plaintiff complied with the terms of the chapter 13 bankruptcy plan, was

successfully discharged—excepted the secured mortgage debt from being discharged, therefore, any remarks and/or references to Plaintiff's chapter 13 bankruptcy should have been removed from the Wells Fargo Mortgage tradelines after the Bankruptcy was discharged. [1]

20.      Metro 2 guidelines require furnishers and CRAs to update the reporting of an account when the borrower associated to the account filed chapter 13 bankruptcy by first updating the Consumer Information Indicator ("CII") to "D", and then continuing to furnish the monthly payment history information with a value of "D". Metro 2 guidelines further require furnishers and CRAs to update the reporting of an account when the borrower associated to the account is discharged from chapter 13 bankruptcy by updating the CII to "Q". In following these simple Metro 2 guidelines, which are well regarded as the industry standards, it prevents the reporting of any late payment history during the pendency of a consumer's chapter 13 Bankruptcy, and allows payments made by the consumer after the chapter 13 bankruptcy is discharged to be reported. Metro 2 guidelines are followed by both furnishers and CRAs.

21.      Within the Experian credit report Plaintiff noticed that it reported the Wells Fargo mortgage account without the correct update that indicated that this secured debt was initially filed. This led to reporting this open account as "closed" with a $0 balance, a $0 payment amount and an account rating as "Derogatory". Further, Experian neglected to provide the update that the tradeline was later discharged and failed to update the recent activity following the bankruptcy. The reporting is incorrect because Plaintiff complied with the terms of the chapter 13 bankruptcy plan, was

---

[1] The Consumer Data Industry Association's Metro 2 reporting standards specifically instruct consumer reporting agencies to remove any suppression codes associated with bankruptcy reporting for an account once the chapter 13 bankruptcy is discharged so that ongoing payments made by the consumer can be reported.

successfully discharged—excepted the secured Wells Fargo mortgage debt from being discharged, therefore, any remarks and/or references to and/or suppression information related to Plaintiff's chapter 13 bankruptcy should have been removed from the Wells Fargo Mortgage tradelines after the Bankruptcy was discharged. [2]

22.     Metro 2 guidelines require furnishers and CRAs to update the reporting of an account when the borrower associated to the account filed chapter 13 bankruptcy by first updating the Consumer Information Indicator ("CII") to "D", and then continuing to furnish the monthly payment history information with a value of "D". Metro 2 guidelines further require furnishers and CRAs to update the reporting of an account when the borrower associated to the account is discharged from chapter 13 bankruptcy by updating the CII to "Q". In following these simple Metro 2 guidelines, which are well regarded as the industry standards, it prevents the reporting of any late payment history during the pendency of a consumer's chapter 13 Bankruptcy, and allows payments made by the consumer after the chapter 13 bankruptcy is discharged to be reported. Metro 2 guidelines are followed by both furnishers and CRAs.

23.     In or around January 2024, Plaintiff sent direct disputes to Equifax, and Experian, and requested that the CRA Defendants investigate the reporting of the Wells Fargo mortgage account. Plaintiff requested that under the FCRA, each CRA Defendant conduct a reasonable investigation and/or remedy the inaccuracies on Plaintiff's credit reports concerning the Wells Fargo mortgage account.

---

[2] The Consumer Data Industry Association's Metro 2 reporting standards specifically instruct consumer reporting agencies to remove any suppression codes associated with bankruptcy reporting for an account once the chapter 13 bankruptcy is discharged so that ongoing payments made by the consumer can be reported.

24.     Within these dispute letters, Plaintiff described in great detail the issues and the misreporting following his bankruptcy and enclosed copies of his bankruptcy docket report, trustee final report, and/or discharge order. Redacted copies of Plaintiff's unsigned dispute letters sent to Equifax, and Experian, are attached hereto as Exhibits E and F respectively.

25.     Equifax responded to Plaintiff's dispute on February 4, 2024, and stated that the "THIS ACCOUNT IS NOT REPORTING INCLUDED IN BANKRUPTCY ON YOUR EQUIFAX CREDIT FILE." Notably, the tradeline still failed to show a balance amount and a scheduled payment amount. A redacted copy of Equifax's response is attached hereto as Exhibit G.

26.     Plaintiff requested an updated credit report on March 8, 2024, and discovered that Equifax made no changes in response to Plaintiff dispute letter sent in January 2024.  A redacted copy of Plaintiff's three-bureau March 8, 2024, credit report is attached hereto as Exhibit H.

27.     Equifax's responses, or lack thereof, were not the result of a reasonable investigation into Plaintiff's dispute(s) and failed to remedy the inaccuracies within the Wells Fargo tradeline and gave no explanation as to why it failed to sufficiently update the Wells Fargo Mortgage tradeline when Plaintiff filed chapter 13 bankruptcy, complied with the requirements of the chapter 13 bankruptcy plan, was successfully discharged, and continued to make payments on the mortgage account because it was still open following the bankruptcy discharge.

28.     Equifax's response(s) were not the result of reasonable investigations into Plaintiff's dispute(s) for they did not adequately evaluate or consider Plaintiff's information, claims, or evidence and failed to remedy the inaccuracies within the Wells Fargo Mortgage tradelines.

29.     Plaintiff sent a very clear dispute, and yet Equifax made no changes to the disputed information, bankruptcy status, and/or account status.

30.     Equifax chose to "verify" false information from an unreliable source, failed to correct the inaccurate information, and inappropriately deleted Plaintiff's Wells Fargo account.

31.     Upon the Plaintiff's request to Equifax for verification and addition regarding the Wells Fargo mortgage account, and in accordance with Equifax's standard procedures, Equifax did not evaluate or consider any of Plaintiff's information, claims or evidence. Importantly, Equifax failed to maintain procedures which would ensure that, if any investigation took place, it would provide Plaintiff's with a response communicating the results. Further, Equifax did not make any attempt to substantially or reasonably verify the Wells Fargo Mortgage account.

32.     In the alternative, and in accordance with Equifax's standard procedures, Equifax failed to contact Wells Fargo, therefore, failed to perform any investigation at all.

33.     In the alternative to the allegation that Equifax failed to contact Wells Fargo, it is alleged that Equifax did forward some notice of the dispute to Wells Fargo, and Wells Fargo failed to conduct a lawful investigation.

34.     Experian responded to Plaintiff's dispute on March 7, 2024, and identified status as "Petition for Chapter 13 Bankruptcy/Never Late."  A redacted copy of the Experian response to Plaintiff's Dispute Letter is attached hereto as Exhibit I.

35.     Plaintiff requested an updated credit report on March 8, 2024, and discovered that Experian made no changes in response to Plaintiff dispute letter sent in January 2024. See Exhibit H.

36.     Experian's responses, or lack thereof, were not the result of a reasonable investigation into Plaintiff's dispute(s) and failed to remedy the inaccuracies within the Wells Fargo tradeline and gave no explanation as to why it failed to sufficiently update the Wells Fargo tradeline

when Plaintiff filed chapter 13 bankruptcy, complied with the requirements of the chapter 13 bankruptcy plan, was successfully discharged, and continued to make payments on the mortgage account because it was still open following the bankruptcy discharge.

37.     Experian's responses were not the result of reasonable investigations into Plaintiff's dispute(s) for they did not adequately evaluate or consider Plaintiff's information, claims, or evidence and failed to remedy the inaccuracies within the Wells Fargo Mortgage tradelines.

38.     Plaintiff sent very clear disputes, and yet Experian made no changes to the disputed information, bankruptcy status, and/or account status. Rather, Experian removed the account in its entirety.

39.     Experian chose to "verify" false information from an unreliable source, failed to correct the inaccurate information, and inappropriately deleted Plaintiff's Wells Fargo account.

40.     Upon the Plaintiff's request to Experian for verification and addition regarding the Wells Fargo mortgage account, and in accordance with Experian's standard procedures, Experian did not evaluate or consider any of Plaintiff's information, claims or evidence. Importantly, Experian failed to maintain procedures which would ensure that, if any investigation took place, it would provide Plaintiff with a response communicating the results. Further, Experian did not make any attempt to substantially or reasonably verify the Wells Fargo Mortgage account.

41.     In the alternative, and in accordance with Experian's standard procedures, Experian failed to contact Wells Fargo, therefore, failed to perform any investigation at all.

42.     In the alternative to the allegation that Experian failed to contact Wells Fargo, it is alleged that Experian did forward some notice of the dispute to Wells Fargo, and Wells Fargo failed to conduct a lawful investigation.

43.     Plaintiff also send a disputed letter to Defendant Wells Fargo in January 2024.

44.     On February 22, 2024, Wells Fargo responded as follows:

> Our research determined the mortgage account was accurately reported as petition for chapter 13 bankruptcy while the account was in petition for chapter 13 bankruptcy from August of 2018 to June of 2023. The chapter 13 bankruptcy was discharged on June 16, 2023, and the account resumed reporting and coding removed the petition for chapter 13 bankruptcy reporting. We found no errors in how the mortgage account is reporting and will not be making any corrections.

A redacted copy of Wells Fargo's Response is attached hereto as Exhibit J.

45.     Plaintiff requested an updated credit report on March 8, 2024, and discovered that neither Experian nor Equifax made no changes in response to Plaintiff dispute letter sent in January 2024. *See* Exhibit H.

## V.  GROUNDS FOR RELIEF

### COUNT I – EQUIFAX'S VIOLATION OF THE FCRA
### (15 U.S.C. § 1681e(b))

1.     The Plaintiff realleges and incorporates all paragraphs above as if fully set out herein.

2.     Equifax violated 15 U.S.C. § 168le(b) by failing to establish or follow reasonable procedures to assure maximum possible accuracy in the preparation of the credit reports and credit files it published and maintained concerning the Plaintiff.

3.     The FCRA mandates that "[w]henever a consumer reporting agency prepares a consumer report it shall follow reasonable procedures to assure maximum possible **accuracy** of the information concerning the individual about whom the report relates." 15 U.S.C. § 168le(b) (emphasis added).

4.     Plaintiff furnished Equifax the necessary documentation supporting Plaintiff's

tradeline, yet Equifax continued to prepare a patently false consumer report concerning Plaintiff.

5.      Despite actual and implied knowledge that Plaintiff's credit reports were and are not accurate, Equifax readily provided false reports to one or more third parties, thereby misrepresenting Plaintiff, and ultimately Plaintiff's creditworthiness.

6.      After Equifax knew or should have known Plaintiff's account status in relation to Plaintiff's bankruptcy was inaccurate, Defendant failed to make the corrections.

7.      As a result of Equifax's conduct, action, and inaction, the Plaintiff suffered damages, including, but not limited to: loss in Plaintiff's ability to finance goods; loss of credit, loss of the ability to purchase and benefit from credit; emotional anguish, frustration, and annoyance from being deterred from applying for credit; mental anguish, humiliation, anger, frustration, annoyance, and embarrassment as a result of the publication of false information; lost credit capacity and decreased credit scores; damage to reputation; mental anguish, emotional distress, frustration, humiliation, and annoyance as a result of being burdened with a false credit reporting history; lost opportunities to obtain credit in the form of an unspecified number of credit offers that Plaintiff did not receive because of the false and derogatory information contained in Plaintiff's credit report; Plaintiff's lowered credit score may have impacted the interest rates Plaintiff has on current loans; Plaintiff's lowered credit score may have impacted the interest rates Plaintiff received during this ordeal; Plaintiff's lowered credit score may have impacted the credit limits Plaintiff has on existing accounts; Plaintiff's spent considerable time, effort, and expense attempting to force Defendant to comply with Defendant's statutory obligations, including but not limited to reviewing information online, telephone calls, emails, writing letters, sending letters, and attempting to decipher letters, reports, and other instruments provided by Defendant; loss of self-esteem because of Defendant's

continued persistence in painting Plaintiff in a false light both personally and financially; anxiety when considering seeking additional credit because Plaintiff believes Plaintiff will be forced to be subjected to the humiliation of having to explain the false and defamatory information; and the costs and time Plaintiff has spent trying to repair Plaintiff's credit in light of the damage done to it continuously by Defendant.

8.     Equifax's conduct, action, and inaction, were willful, rendering it liable to Plaintiff for punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. § 168ln. In the alternative, such conduct, action, and inaction, were negligent, entitling the Plaintiff to recover under 15 U.S.C. § 1681o.

9.     The Plaintiff is entitled to recover costs and attorney's fees from Equifax in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n and/or 1681o.

### COUNT II – EQUIFAX'S VIOLATION OF THE FCRA
### (15 U.S.C. §1681i)

10.     The Plaintiff realleges and incorporates all paragraphs above as if fully set out herein.

11.     Equifax violated § 1681i by failing to update inaccurate information in the Plaintiff's credit files after receiving actual notice of such inaccuracies, failing to conduct a lawful reinvestigation, failing to forward all relevant information to furnisher(s), failing to maintain reasonable procedures with which to filter and verify disputed information in the Plaintiff's credit files, and relying upon verification from a source it has reason to know is unreliable.

12.     As a result of Equifax's conduct, action, and inaction, the Plaintiff suffered damages, including, but not limited to: loss in Plaintiff's ability to finance goods; loss of credit, loss of the ability to purchase and benefit from credit; emotional anguish, frustration, and annoyance from being deterred from applying for credit; mental anguish, humiliation, anger, frustration, annoyance,

and embarrassment as a result of the publication of false information; lost credit capacity and decreased credit scores; damage to reputation; mental anguish, emotional distress, frustration, humiliation, and annoyance as a result of being burdened with a false credit reporting history; lost opportunities to obtain credit in the form of an unspecified number of credit offers that Plaintiff did not receive because of the false and derogatory information contained in Plaintiff's credit report; Plaintiff's lowered credit score may have impacted the interest rates Plaintiff has on current loans; Plaintiff's lowered credit score may have impacted the interest rates Plaintiff received during this ordeal; Plaintiff's lowered credit score may have impacted the credit limits Plaintiff has on existing accounts; Plaintiff's spent considerable time, effort, and expense attempting to force Defendant to comply with Defendant's statutory obligations, including but not limited to reviewing information online, telephone calls, emails, writing letters, sending letters, and attempting to decipher letters, reports, and other instruments provided by Defendant; loss of self-esteem because of Defendant's continued persistence in painting Plaintiff in a false light both personally and financially; anxiety when considering seeking additional credit because Plaintiff believes Plaintiff will be forced to be subjected to the humiliation of having to explain the false and defamatory information; and the costs and time Plaintiff has spent trying to repair Plaintiff's credit in light of the damage done to it continuously by Defendant.

13.     Equifax's conduct, action, and inaction, were willful, rendering it liable for actual or statutory damages, and punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n. In the alternative, such conduct, action, and inaction were negligent entitling the Plaintiff to recover actual damages under 15 U.S.C. § 1681o.

14.     The Plaintiff is entitled to recover costs and attorney's fees from Equifax in an

amount to be determined by the Court pursuant to 15 U.S.C. § 1681n and/or 1681o.

**COUNT III – EXPERIAN'S VIOLATION OF THE FCRA**
**(15 U.S.C. § 1681e(b))**

15. The Plaintiff realleges and incorporates all paragraphs above as if fully set out herein.

16. Experian violated 15 U.S.C. § 168le(b) by failing to establish or follow reasonable procedures to assure maximum possible accuracy in the preparation of the credit reports and credit files it published and maintained concerning the Plaintiff.

17. The FCRA mandates that "[w]henever a consumer reporting agency prepares a consumer report it shall follow reasonable procedures to assure maximum possible **accuracy** of the information concerning the individual about whom the report relates." 15 U.S.C. § 168le(b) (emphasis added).

18. Plaintiff furnished Experian the necessary documentation supporting Plaintiff's tradeline, yet Experian continued to prepare a patently false consumer report concerning Plaintiff.

19. Despite actual and implied knowledge that Plaintiff's credit reports were and are not accurate, Experian readily provided false reports to one or more third parties, thereby misrepresenting Plaintiff, and ultimately Plaintiff's creditworthiness.

20. After Experian knew or should have known Plaintiff's account status in relation to Plaintiff's bankruptcy was inaccurate, Defendant failed to make the corrections.

21. As a result of Experian's conduct, action, and inaction, Plaintiff suffered damages, including, but not limited to: loss in Plaintiff's ability to finance goods; loss of credit, loss of the ability to purchase and benefit from credit; emotional anguish, frustration, and annoyance from being deterred from applying for credit; mental anguish, humiliation, anger, frustration, annoyance,

and embarrassment as a result of the publication of false information; lost credit capacity and decreased credit scores; damage to reputation; mental anguish, emotional distress, frustration, humiliation, and annoyance as a result of being burdened with a false credit reporting history; lost opportunities to obtain credit in the form of an unspecified number of credit offers that Plaintiff did not receive because of the false and derogatory information contained in Plaintiff's credit report; Plaintiff's lowered credit score may have impacted the interest rates Plaintiff has on current loans; Plaintiff's lowered credit score may have impacted the interest rates Plaintiff received during this ordeal; Plaintiff's lowered credit score may have impacted the credit limits Plaintiff has on existing accounts; Plaintiff's spent considerable time, effort, and expense attempting to force Defendant to comply with Defendant's statutory obligations, including but not limited to reviewing information online, telephone calls, emails, writing letters, sending letters, and attempting to decipher letters, reports, and other instruments provided by Defendant; loss of self-esteem because of Defendant's continued persistence in painting Plaintiff in a false light both personally and financially; anxiety when considering seeking additional credit because Plaintiff believes Plaintiff will be forced to be subjected to the humiliation of having to explain the false and defamatory information; and the costs and time Plaintiff has spent trying to repair Plaintiff's credit in light of the damage done to it continuously by Defendant.

22.     Experian's conduct, action, and inaction, were willful, rendering it liable to Plaintiff for punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. § 168ln. In the alternative, such conduct, action, and inaction, were negligent, entitling the Plaintiff to recover under 15 U.S.C. § 1681o.

23.     The Plaintiff is entitled to recover costs and attorney's fees from Experian in an

amount to be determined by the Court pursuant to 15 U.S.C. § 1681n and/or 1681o.

**COUNT IV – EXPERIAN'S VIOLATION OF THE FCRA**
**(15 U.S.C. §1681i)**

24.     The Plaintiff realleges and incorporates all paragraphs above as if fully set out herein.

25.     Experian violated § 1681i by failing to update inaccurate information in the Plaintiff's credit files after receiving actual notice of such inaccuracies, failing to conduct a lawful reinvestigation, failing to forward all relevant information to furnisher(s), failing to maintain reasonable procedures with which to filter and verify disputed information in the Plaintiff's credit files, and relying upon verification from a source it has reason to know is unreliable.

26.     As a result of Experian's conduct, action, and inaction, he Plaintiff suffered damages, including, but not limited to: loss in Plaintiff's ability to finance goods; loss of credit, loss of the ability to purchase and benefit from credit; emotional anguish, frustration, and annoyance from being deterred from applying for credit; mental anguish, humiliation, anger, frustration, annoyance, and embarrassment as a result of the publication of false information; lost credit capacity and decreased credit scores; damage to reputation; mental anguish, emotional distress, frustration, humiliation, and annoyance as a result of being burdened with a false credit reporting history; lost opportunities to obtain credit in the form of an unspecified number of credit offers that Plaintiff did not receive because of the false and derogatory information contained in Plaintiff's credit report; Plaintiff's lowered credit score may have impacted the interest rates Plaintiff has on current loans; Plaintiff's lowered credit score may have impacted the interest rates Plaintiff received during this ordeal; Plaintiff's lowered credit score may have impacted the credit limits Plaintiff has on existing accounts; Plaintiff's spent considerable time, effort, and expense attempting to force Defendant to

comply with Defendant's statutory obligations, including but not limited to reviewing information online, telephone calls, emails, writing letters, sending letters, and attempting to decipher letters, reports, and other instruments provided by Defendant; loss of self-esteem because of Defendant's continued persistence in painting Plaintiff in a false light both personally and financially; anxiety when considering seeking additional credit because Plaintiff believes Plaintiff will be forced to be subjected to the humiliation of having to explain the false and defamatory information; and the costs and time Plaintiff has spent trying to repair Plaintiff's credit in light of the damage done to it continuously by Defendant.

27.     Experian's conduct, action, and inaction, were willful, rendering it liable for actual or statutory damages, and punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n. In the alternative, such conduct, action, and inaction were negligent entitling the Plaintiff to recover actual damages under 15 U.S.C. § 1681o.

28.     The Plaintiff is entitled to recover costs and attorney's fees from Experian in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n and/or 1681o.

### COUNT V – WELLS FARGO'S VIOLATION OF THE FCRA
### (15 U.S.C. §1681s-2(b))

29.     The Plaintiff realleges and incorporates all paragraphs above as if fully set out herein.

30.     Defendant Wells Fargo violated 15 U.S.C. § 1681s-2(b) by failing to conduct reasonable investigations upon receiving notice of Plaintiff's dispute(s) from one or more consumer reporting agencies, and/or failing to appropriately report the results of their investigations, and/or failing to appropriately modify the information.

31.    Wells Fargo further violated 15 U.S.C. § 1681s-2(b) by continuing to report the Wells Fargo representation within Plaintiff's credit files with the CRA Defendants without also including a notation that this debt was disputed, failing to fully and properly investigate the Plaintiff's dispute(s) of the Wells Fargo representation, failing to accurately respond to the CRA Defendants, failing to correctly report results of an accurate investigation to every other consumer reporting agency, and failing to permanently and lawfully correct its own internal records to prevent the re-reporting of the Wells Fargo representations to the consumer reporting agencies.

32.    As a result of Wells Fargo's conduct, action, and inaction, Plaintiff suffered damages, including, but not limited to: loss in Plaintiff's ability to finance goods; loss of credit, loss of the ability to purchase and benefit from credit; emotional anguish, frustration, and annoyance from being deterred from applying for credit; mental anguish, humiliation, anger, frustration, annoyance, and embarrassment as a result of the publication of false information; lost credit capacity and decreased credit scores; damage to reputation; mental anguish, emotional distress, frustration, humiliation, and annoyance as a result of being burdened with a false credit reporting history; lost opportunities to obtain credit in the form of an unspecified number of credit offers that Plaintiff did not receive because of the false and derogatory information contained in Plaintiff's credit report; Plaintiff's lowered credit score may have impacted the interest rates Plaintiff has on current loans; Plaintiff's lowered credit score may have impacted the interest rates Plaintiff received during this ordeal; Plaintiff's lowered credit score may have impacted the credit limits Plaintiff has on existing accounts; Plaintiff's spent considerable time, effort, and expense attempting to force Defendant to comply with Defendant's statutory obligations, including but not limited to reviewing information online, telephone calls, emails, writing letters, sending letters, and attempting to decipher letters,

reports, and other instruments provided by Defendant; loss of self-esteem because of Defendant's continued persistence in painting Plaintiff in a false light both personally and financially; anxiety when considering seeking additional credit because Plaintiff believes Plaintiff will be forced to be subjected to the humiliation of having to explain the false and defamatory information; and the costs and time Plaintiff has spent trying to repair Plaintiff's credit in light of the damage done to it continuously by Defendant.

33.     Wells Fargo's conduct, action, and inaction, were willful, rendering it liable for actual or statutory, and punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n. In the alternative, it was negligent entitling the Plaintiff to recover actual damages under 15 U.S.C. § 1681o.

## VI.  VICARIOUS LIABILITY/RESPONDEAT SUPERIOR

34.     Plaintiff will be able to show, after reasonable discovery, that all actions at issue were taken by employees, agents, servants, or representatives, of any type, for Defendants, the principals, within the line and scope of such individuals' (or entities') express or implied authority, through employment, agency, or representation, which imputes liability to Defendants for all such actions under the doctrine of respondeat superior and/or vicarious liability.

## VII. DAMAGES

35.     Plaintiff respectfully requests that this Honorable Court instruct the jury, as the trier of facts, that in addition to actual or compensatory damages, punitive or exemplary damages may be awarded against the Defendants under the provisions of the FCRA and/or states' laws, including Iowa.

36.     Plaintiff respectfully requests that this Honorable Court award Plaintiff's litigation expenses and other costs of litigation and reasonable attorney's fees incurred in this litigation, in accordance with the provisions of the FCRA, and/or other laws.

37.     The above and foregoing actions, inactions, and fault of Defendants, as to each and every claim, have proximately caused a wide variety of damages to Plaintiff.

38.     Defendants performed perfunctory and essentially useless reinvestigations resulting in the verification of false reportings about the Plaintiff and have been a substantial factor in causing credit denials and other damages.

39.     Plaintiff suffered a variety of damages, including economic and non-economic damages as prayed for herein.

40.     Defendants have negligently and/or willfully violated various provisions of the FCRA and are thereby liable unto Plaintiff.

41.     Defendants are liable unto Plaintiff for all actual, statutory, exemplary and punitive damages awarded in this case, as well as other demands and claims asserted herein including, but not limited to: out-of-pocket expenses; credit denials; loss in Plaintiff's ability to finance goods; loss of credit, loss of the ability to purchase and benefit from credit; emotional anguish, frustration, and annoyance from being deterred from applying for credit; mental anguish, humiliation, anger, frustration, annoyance, and embarrassment as a result of the publication of false information; lost credit capacity and decreased credit scores; damage to reputation; mental anguish, emotional distress, frustration, humiliation, and annoyance as a result of being burdened with a false credit reporting history; lost opportunities to obtain credit in the form of an unspecified number of credit offers that Plaintiff did not receive because of the false and derogatory information contained in

Plaintiff's credit report; Plaintiff's lowered credit score may have impacted the interest rates Plaintiff has on current loans; Plaintiff's lowered credit score may have impacted the interest rates Plaintiff received during this ordeal; Plaintiff's lowered credit score may have impacted the credit limits Plaintiff has on existing accounts; Plaintiff's spent considerable time, effort, and expense attempting to force Defendants to comply with Defendants' statutory obligations, including but not limited to reviewing information online, telephone calls, emails, writing letters, sending letters, and attempting to decipher letters, reports, and other instruments provided by Defendants; loss of self-esteem because of Defendants' continued persistence in painting Plaintiff in a false light both personally and financially; anxiety when considering seeking additional credit because Plaintiff believes Plaintiff will be forced to be subjected to the humiliation of having to explain the false and defamatory information; the costs and time Plaintiff has spent trying to repair Plaintiff's credit in light of the damage done to it continuously by Defendants; attorney's fees; court costs; and other assessments proper by law and any and all other applicable federal and state laws, together with legal interest thereon from date of judicial demand until paid.

**WHEREFORE PREMESIS CONSIDERED**, Plaintiff, Dewey Bethel, prays that this Honorable Court:

A.      Enter Judgment in favor of Plaintiff and against Defendants Equifax Information Services LLC, Experian Information Solutions, Inc., and Wells Fargo Home Mortgage, Inc., jointly, severally, and in solido, for all reasonable damages sustained by Plaintiff, including, but not limited to, actual damages, compensatory damages, out-of-pocket expenses, credit denials, costs and time of repairing their credit, pain and suffering, embarrassment, inconvenience, lost economic opportunity,

loss of incidental time, frustration, emotional distress, mental anguish, and fear of personal and financial safety and security for Defendants' violations of the FCRA, and applicable state law, and common law;

B.     Find that the appropriate circumstances exist for an award of punitive damages to Plaintiff;

C.     Award Plaintiff pre-judgment and post-judgment interest, as allowed by law;

D.     Order that the CRA Defendants, Equifax Information Services LLC, Experian Information Solutions, Inc., and Furnisher Defendant, Wells Fargo Home Mortgage, Inc., work in conjunction, cooperatively, and/or individually to reinvestigate and correct the consumer report(s), credit report(s), data emanations, consumer histories, and credit histories of and concerning Plaintiff and/or any of Plaintiff's personal identifiers.

E.     Grant such other and further relief, in law or equity, to which Plaintiff might show Plaintiff is justly entitled.

Date Filed: 8/6/2024

Respectfully submitted,

/s/ Matthew P. Forsberg
Matthew P. Forsberg
TX State Bar No. 24082581
Matt@FieldsLaw.com
FIELDS LAW FIRM
9999 Wayzata Blvd.
Minnetonka, Minnesota 55305
(612) 383-1868 (telephone)
(612) 370-4256 (fax)

**LAW OFFICE OF JONATHAN A. HEEPS**

/s/ *Jonathan A. Heeps*
Jonathan A. Heeps
TX State Bar No. 24074387
LAW OFFICE OF JONATHAN A. HEEPS
Post Office Box 174372
Arlington, Texas 76003
Telephone (682) 738-6415
Fax (844) 738-6416
jaheeps@heepslaw.com


COUNSEL FOR PLAINTIFF

## JURY DEMAND

Plaintiff hereby demands a trial by jury on all issues so triable.

*/s/ Matthew Forsberg*

Date: 8/6/2024                    Matthew Forsberg